(26 Misc. Rep. 282.)

KNICKERBOCKER TRUST CO. v. POLLEY et al.

(Supreme Court, Special Term, New York County. February, 1899.)

1. PROMISSORY NOTES—RIGHT TO ENFORCE—DEPOSITARIES.

Indorsers of notes being sureties on an appeal undertaking of the payee, the notes were "deposited" with a trustee to "secure" the sureties. In case of affirmance of the judgment, the indorsers were to take up the notes, whether due or not, and the proceeds were to be used to pay the judgment; the balance to be held by the trustee for the payee. In case of reversal, the notes were to be delivered to the payee. The face of the notes was $55,000, and, in consideration of $50, the trustee agreed to hold the notes, and deliver the same or dispose of the proceeds as above. *Held*, that the trustee was a mere depositary, and could not enforce the notes.

2. SAME—INDORSEMENT—SURETIES.

The notes could not be enforced against the indorsers before a final affirmance or reversal of the judgment appealed from.

Action by the Knickerbocker Trust Company against Grahams Polley and others. On demurrers to amended answers of defendants. Overruled.

Davies, Stone & Auerbach, for plaintiff.

Turner, McClure & Rolston, for defendants.

STOVER, J. The questions to be considered are raised by demurrers to amended answers of the defendants in three actions brought upon four promissory notes, dated September 25, 1897, and aggregating $55,000, made by the defendant Grahams Polley to the order of Edward S. Stokes, and indorsed by the defendants Learys and McDonald. These notes were given upon the purchase by the defendant Polley of the Hoffman House property, and as a part consideration therefor. Simultaneously with the agreement to purchase, an agreement to guaranty the notes was made ·by defendants Learys and McDonald; and, as a part of the same transaction, another agreement, dated September 27, 1897, was entered into between the plaintiff, the Knickerbocker Trust Company, and Edward S. Stokes, and the defendants other than Polley. This agreement is in writing, and is set forth in the answers. This agreement recites that Edward S. Stokes is about to deposit with the Knickerbocker Trust Company, party thereto, certain promissory notes, made by Polley, and indorsed by the defendants Learys and McDonald, for the purpose of securing said Learys and McDonald against any loss on their part by reason of their being sureties upon an appeal to the court of appeals in an action in which Edward S. Stokes was plaintiff and William E. D. Stokes was defendant. The agreement further recited that it was understood by an agreement between Grahams Polley and the parties of the second part that, in case of the affirmance of the said judgment by the court of· appeals, the Learys and McDonald, the parties of the second part, should take up said notes, whether the same be then past maturity or not, and that the proceeds of. said notes, namely, $55,000 and accrued interest, should be applied upon the judgment in said action, in case of affirmance as aforesaid, and so much thereof as should remain after the said payment should be held by said trust company, subject to the order of said Edward S. Stokes. And, in consideration of the sum of $50 paid by the parties of the second part, Stokes, Learys, and McDonald, the party of the first part, plaintiff herein, the Knickerbocker Trust Company, agreed to hold said notes subject to the terms of the agreement between said Grahams Polley and the parties specified as above, and deliver the same and dispose of the proceeds thereof as above required and directed, in case of the affirmance of the said judgment; and, in case of the reversal of said judgment, the party of the first part agreed to deliver said notes to said Edward S. Stokes on the production of the certificate or order of the court of appeals, or of the supreme court, showing such reversal, etc. These notes were thereupon delivered, under this agreement, to the Knickerbocker Trust Company. Not having been paid at maturity, this action is brought. It appears from the answers that the judgment in Stokes against Stokes had been affirmed in the court of appeals; and the defendants allege that the Knickerbocker Trust Company was and is unable to comply with the terms of said agreement, for the reason that such judgment was, upon the application of said Edward S. Stokes, vacated and set aside by order of the supreme court, and a new trial granted, upon certain conditions, which were to be complied with within a time specified, and that the

time for the compliance with the conditions imposed upon the granting of a new trial had been, upon the mutual consent of the parties to that action, postponed until the determination of the appeal from the order granting the new trial. Another separate answer set forth that the plaintiff was not the owner or holder of the notes set forth in the complaint; and a third defense set out in the answer contained a counterclaim growing out of the fraudulent representations alleged to have been made by the defendant Stokes upon the purchase of the Hoffman House property, and which representations defendant Polley relied upon in making the purchase, and by which he had sustained damage to an amount much larger than the amount of the notes in suit.

The demurrers admit the facts set forth in the amended answer, and the first matter to be treated in the consideration of the questions raised is the relation of the plaintiff herein to the notes in suit; for I take it that, unless the transfer to the plaintiff conferred upon it some title or property in the notes in suit, the action cannot be maintained by it in its present form. Of course, it is not necessary that the plaintiff should be a holder for value, in order to maintain an action upon the notes, as the owner might have given them to whom he chose, or even a delivery with intent to pass the title or property in the notes would have conferred sufficient authority to maintain an action upon the notes. But I have arrived at the conclusion that it was not the intention of the parties to the agreement to invest the plaintiff with the title to the notes, either for the purpose of enforcing them, or for any other purpose, but that the circumstances surrounding the transfer, and the terms of the agreements themselves, are such as to preclude the idea that it was intended by the parties that the plaintiff should take any property whatever in the notes, but that it was simply intended to constitute the plaintiff a depositary, with the power of manual transfer of the proceeds of the notes in the direction indicated by the agreement, or of the notes themselves, in the event of the judgment being reversed. It will be observed that the agreement between the plaintiff and the defendants is made with reference to the prior agreement, by which defendants undertook to become surety for Stokes upon appeal to the court of appeals. They were already sureties upon the appeal, having signed an undertaking; and now, in order to protect them, their principal, Stokes, deposits the notes with plaintiff as security. Stokes still retained the title to the notes, and in fact the agreement itself stipulates that upon the reversal of the judgment the notes themselves are to be delivered up. Furthermore, a provision that upon the affirmance of the judgment the notes should be paid by the sureties upon the undertaking, whether they shall have matured or not, is a circumstance which would indicate that, so far as the agreement between the plaintiff and the parties here is concerned, the time of payment of the notes was not in mind at the time the deposit was made. Again, the object of the parties was not to collect the notes, or to have them collected, for their joint benefit, but to deposit them for the benefit of the sureties. But for this, Stokes might have retained the possession and control of the notes. He

still had the legal title. He still could have sued upon the notes
when they matured, if he desired. The deposit, therefore, having
been made entirely for the benefit of the sureties, there was no neces-
sity to convey title, either special or otherwise, to the plaintiff herein;
for the indorsers had a right, at maturity, to take up the notes and
enforce them for their own benefit. Certainly it could not be said
that it was contemplated by the agreement that Stokes, or any one
standing in his place, could enforce the notes as against his sureties.
I am not unmindful of the argument that by the indorsement of the
notes the sureties made themselves liable to be treated as indorsers,
but the contract of indorsement is to be construed with the other
contracts already made; and, it appearing that these special con-
tracts have modified the general one of indorsement, the transac-
tion is to be judged by the special contracts. It will be seen that the
contract itself uses the words, "the above-named Stokes is about
to deposit with the party of the first part"; then following with the
agreement, which contains provisions for the deposit of the proceeds,
if paid before maturity, and of the notes themselves in the happen-
ing of certain events. It would seem that if the parties had contem-
plated a transfer which would pass the title to the notes in ques-
tion, either for a general or for a special purpose, apt language
would have been used to effectuate that intention.

Another provision which is entitled to more or less consideration:
The agreement itself fixes the compensation of the depositary. If
it had been contemplated that the plaintiff should become an active
trustee, with general control of the property as such, it would hardly
seem probable that such a provision as to compensation would have
been made. If the plaintiff was a trustee, it could only be a trustee
for the purposes and to the extent necessary to carry out the agree-
ment between the parties; and the agreement itself recites that the
notes are deposited for the purpose of securing the sureties against
any loss on their part by reason of the undertaking given by them
on appeal. This purpose was completely accomplished when, upon
an affirmance of the judgment, they had paid the notes, and the notes
would thereupon be delivered to them. And the plaintiff has dis-
charged its full obligation when it receives and pays over the pro-
ceeds of the notes when thus paid by the sureties. And upon a
reversal of the judgment, the liability of the sureties having ended,
the notes are delivered up to the owner, Stokes. If the notes were not
paid at maturity, Stokes' property in the notes still existed; an ac-
tion could be maintained, and the parties properly brought into
court where the rights of all could be adjudicated. The plaintiff
has nowhere, by agreement, express or implied, undertaken to collect
or enforce the notes. It was a simple depositary, as the agreement
recites, for the benefit of the sureties upon the undertaking, and not
for the purpose of enforcing the notes against the sureties. The
notes are deposited with the plaintiff for the benefit of the sureties
upon the undertaking; and the purposes of that agreement would
rather be thwarted, than accomplished, if the agreement were con-
strued so as to enable the notes to be enforced against the sureties
before the event contemplated by the agreement had transpired.

But it is argued that this view leaves out of sight the contract of indorsement. But, as stated above, if the indorsement had been made independently of the special agreement, yet it must be controlled, and the general contract of indorsement modified, in accordance with the terms of the special agreement; and if it were necessary for the plaintiff, as the depositary or custodian of the notes, to preserve the contingent liability of the indorsers upon the note, it would not follow that the title thereto should vest in, or that any property in the notes attached to, the plaintiff in the action. It would be like an agency to present for payment to collect. It is not necessary, in either event, that the title should be vested in the agent. And, if necessary in the discharge of the duties conferred upon an agent, he might present the notes for payment, and give notice to the indorsers, and still be only the agent for collection, and not take any property in the note itself.

The allegation of the answer which is admitted by the demurrer is that the defendants herein, other than Polley, at the time of this agreement agreed to guaranty the payment of all such notes, and that the notes were delivered to the plaintiff under the terms of the special agreement set forth, and not otherwise. Here, then, we have a deposit of the notes for the avowed purpose of protecting the indorsers or guarantors against liability upon a collateral, independent agreement, changing the entire tenor of the contract of indorsement, and imposing a greater liability upon the indorsers or guarantors than the simple-contract indorsement would carry, and not purporting, either upon its face or constructively, to convey title to property, either special or general, in the notes themselves; yet by this action it is sought to charge the guarantors, without reference to the special agreement, and before the happening of the contingency upon which they were to be made liable upon the notes, and, should the judgment be affirmed finally, the guarantors would have been compelled to pay the full amount of the notes, and would yet be liable upon their undertaking as sureties upon the appeal. And, unless there could be an adjudication in accordance with the facts set up in the answer herein, the judgment in favor of the plaintiff in this action would confirm its title absolutely to the notes in question. It would seem that such a conclusion is not warranted from the facts.

This view disposes of the demurrers to the other defenses, as it necessarily results that the plaintiff is not the real party in interest; and also, if it should be held that plaintiff had any title to the notes, it is not a bona fide holder, but a holder subject to any equities that might exist between the original parties. It follows that the demurrers must be overruled, and plaintiff may have leave to plead to the answers, or any portion thereof, if it so desires, on payment of costs within 20 days. Ordered accordingly.